DENVER VENTURES, INC., a Colorado corporation, Plaintiff–Appellant and Cross–Appellee,

v.

ARLINGTON LANE CORPORATION, Defendant–Appellee and Cross–Appellant,

and

American Manufacturer's Mutual Insurance Company, Defendant–Appellee.

No. 85CA0322.

Colorado Court of Appeals, Div. I.

March 17, 1988.

Roath & Brega, P.C., J. Stephen McGuire, Denver, for plaintiff-appellant and cross-appellee.

Hall & Evans, Malcolm S. Mead, Barbara L. Green, Denver, for defendant-appellee and cross-appellant Arlington Lane Corp., and defendant-appellee American Manufacturer's Mut. Ins. Co.

HUME, Judge.

This case arises from a controversy surrounding the construction of a parking garage. Plaintiff, Denver Ventures, Inc. (DVI), appeals the trial court's judgment denying its unjust enrichment claim. Defendant, Arlington Lane Corporation (ALC), appeals the trial court's judgment denying its counterclaim for damages incurred in completing the project. We affirm.

In October 1982, defendant contracted with Pinkard Construction Company (the general contractor) for ALC's provision of labor and materials to construct metal screen walls for a parking garage project. On April 18, 1983, plaintiff entered a written subcontract with defendant in which the former agreed to provide labor necessary to install the metal screen walls, using materials furnished by defendant, for a fixed sum of $212,500. The installation was projected to be completed by August 23, 1983.

Prior to entering the subcontract, representatives of both plaintiff and defendant inspected the project site to discuss its complexity and to examine the concrete work which had been done by the general contractor. During this inspection, the parties were aware that the metal screen walls were to be hung on anchor bolts placed by the general contractor, and that close tolerances were required. At that time the parties were also aware that the anchor bolts then in place were out of tolerance.

Plaintiff began work on May 9, 1983, and immediately encountered difficulties in hanging the metal screen because of the improper placement of the anchor bolts and because of defendant's delays in providing necessary metal materials. Because of continuing difficulties, the parties renegotiated the contract price twice, once in early August 1983, increasing the contract price for labor to $237,500; and again on September 8, 1983, renegotiating the price up to $265,650. The latter renegotiations included compensation for some extras not contemplated in the original agreement, and further adjustment because of unanticipated difficulties and delays encountered by the plaintiff.

By September, progress on installation of the metal screen was well behind schedule, being only 25% completed. Despite these circumstances, plaintiff had submitted billings and had been paid $189,742 in progress payments. Thus, plaintiff had received 75% of the adjusted contract price when only 25% of the project was completed.

Because work continued to fall behind schedule, the owners and the general contractor stopped making progress payments to defendant, who in turn stopped making progress payments to plaintiff. Plaintiff accordingly stopped work and advised defendant that it would not return until progress payments were resumed. Immediately thereafter, defendant terminated the contract and took over completion of the project, at a cost of approximately half a million dollars.

Plaintiff filed a mechanic's lien and subsequently sued for damages under the contract or, in the alternative, for the value of its labor in constructing the metal screen walls. Defendant counterclaimed, asserting that plaintiff had breached the contract, and sought damages for the cost of completion of plaintiff's contract. The trial court denied relief on all claims.

## I.

Relying on *Mitten v. Weston*, 44 Colo. App. 274, 615 P.2d 60 (1980), the trial court held that *quantum meruit* recovery was precluded because the parties had an express contract. We agree with plaintiff that the court's reliance on *Mitten* was misplaced.

■ *Mitten* does not preclude *quantum meruit* recovery by a subcontractor who partially performs its contract. This court's holding in *Mitten* only prevented unjust enrichment recovery by a rescinding purchaser of real property against a real estate broker who had received a commission pursuant to a separate agency contract with the seller. The court held that because the broker had received the commission payment pursuant to an express agency contract with the seller, the purchaser, who was not a party to the agency contract, had no right to judgment for the amount of the commission against the broker, on a theory that the broker had been unjustly enriched. Thus, *Mitten* dealt with a privity problem among three entities involving two distinct contracts, and does not stand for the proposition that the existence of an express contract automatically precludes *quantum meruit* or unjust enrichment recovery.

■ If a subcontractor substantially performs its contractual duties, it may recover the contract price minus damages for its failure fully to perform. *See Little Thompson Water Ass'n v. Strawn*, 171 Colo. 295, 466 P.2d 915 (1970). However, even if the subcontractor does not substantially perform, it may recover the reasonable value of benefits conferred which exceeds the loss created by its own breach. *See Survey Engineers, Inc. v. Zoline Foundation*, 190 Colo. 352, 546 P.2d 1257 (1976); Restatement (Second) of Contracts § 374(1) (1979).

■ Here, the trial court found that plaintiff had breached the contract by its unjustified work stoppage, and that it had received payments equalling 75% of the adjusted contract price when it had completed only 25% of the work. The court also found that the total cost to complete the metal screen wall installation was $758,968, and that plaintiff completed 25% of the total installation for which it had received $189,742. Defendant spent over $500,000 to complete the installation after plaintiff breached the contract. These findings are supported by evidence and will not be disturbed on review. *Leo Payne Pontiac, Inc. v. Ratliff*, 178 Colo. 361, 497 P.2d 997 (1972).

Accordingly, the value of the benefits plaintiff conferred on defendant was less than it cost defendant to complete the project. Hence, under the *Zoline* standard, it was not entitled to recover on a *quantum meruit* theory.

The trial court denied recovery, albeit by application of an erroneous standard, and thus, its judgment will be affirmed. *See American National Bank v. First National Bank*, 28 Colo.App. 486, 476 P.2d 304 (1970).

## II.

Because defendant failed to give plaintiff notice before exercising its right to terminate the contract, the court denied it any recovery on its counterclaim. Defendant, in its cross-appeal, asserts that ruling was error. We disagree.

The termination provision of the contract provides:

"If the Subcontractor ... fails ... to perform, and fails within seven days after receipt of written notice to commence or continue correction of ... default ... the Contractor may, after seven days following receipt by the Subcontractor of an additional written notice ... terminate the Subcontractor and finish the work by whatever method he may deem expedient."

The contractor's remedies provision of the contract provides:

"If the Subcontractor defaults or neglects to carry out the work in accordance with the Agreement, and fails within three working days after receipt of written notice from the Contractor to commence and continue correction of such default or neglect with diligence and promptness, the Contractor may, after three days following receipt by the Subcontractor of an additional written notice ... make good such deficiencies and may deduct the cost thereof from the payments then or thereafter due the Subcontractor...."

Defendant did not give the notices required by either of these provisions. Thus, plaintiff was not afforded an opportunity to cure its breach, resume performance, and minimize the losses.

The court did not err in refusing to award damages on the counterclaim because of the defendant's failure to satisfy the notice provisions of the contract.

The judgment is affirmed.

PIERCE and CRISWELL, JJ., concur.